FILED

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA 2015 APR 15  A 8: 50
ALEXANDRIA DIVISION

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| ROBYN LATESE RUSSELL<br>3500 Silver Park Drive, # 14<br>Suitland, MD 20746<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREWS INTERNATIONAL<br>GOVERNMENT SERVICES, INC.<br>5780 Trinity Parkway, Suite 300<br>Chantilly, VA 20120<br>and<br><br>THE MITRE CORPORATION<br>7515 Colshire Drive,<br>McLean, VA 22102<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:15-CU-491
(JCC/TCB)

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Robyn Russell ("Ms. Russell" or "Plaintiff"), by her attorneys Jeremy Greenberg and

the Clark Law Group, PLLC, files this action, following her exhaustion of administrative

remedies, and alleges as follow:

## NATURE OF ACTION

This is a challenge to Defendants' unlawful discrimination against and retaliatory

discharge of Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e-2 *et seq.* ("Title VII"). Throughout her employment with Defendants, Ms. Russell was the

target of continuing harassment by her secondary supervisor Jeanette "Jae" Boone ("Ms. Boone"). Ms. Boone repeatedly asked Ms. Russell to go on dates; made daily derogatory and sexual comments; asked Ms. Russell if she wanted to view erotic sex acts; called Ms. Russell a "Dom," a punk, soft, and a pussy. While Ms. Russell rejected or ignored all of Ms. Boone's advances and comments, Ms. Russell verbally complained to her immediate supervisor Ernest Tolton ("Mr. Tolton") on several occasions. Mr. Tolton ignored the complaints, advising Ms. Russell to "give in" to Ms. Boone. After Ms. Boone told her supervisor James Robey ("Mr. Robey") that Ms. Russell was homosexual, Mr. Robey began to restrict Ms. Russell's movements at the MITRE Corporation ("MITRE"). Finally, after again complaining to Mr. Tolton of sexual harassment after being written up by Ms. Boone in retaliation for rejecting her advances, Mr. Tolton instructed Ms. Russell to submit her complaint in writing. On the same day Andrews International Government Services, Inc. ("Andrews") reported to Ms. Russell the results of its "investigation" into Ms. Russell's complaint, Ms. Russell was transferred to another location to work for a different client whose contract with Andrews was set to expire several weeks later. When the contract expired, Ms. Russell was terminated from her employment.

To remedy the Defendant's discriminatory conduct, retaliatory conduct, and termination of Plaintiff, Plaintiff seeks back pay, front pay, compensatory damages, attorney's fees and costs, injunctive relief, punitive damages, and other equitable relief this Court deems appropriate.

## JURISDICTION AND VENUE

1. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

2. This Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §1331 and 1343(a)(4) because it arises under the laws of the United States and

seeks redress for violations of civil rights.   This Court also has subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e–5(f)(3) as this matter involves a civil action by an aggrieved person under Title VII.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendant corporations conduct business within the Commonwealth of Virginia.

4. Venue is properly laid in this Court because a substantial part of the events or omissions giving rise to the claim occurred in the Alexandria Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

6. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII.

7. On September 7, 2012, Ms. Russell filed a charge of discrimination against Defendant Andrews with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Fairfax County Human Rights Commission ("FCHRC").

8. On September 7, 2012, Ms. Russell filed a charge of discrimination against Defendant MITRE with the EEOC, which was cross-filed with FCHRC.

9. On January 14, 2015, issued Ms. Russell a Dismissal and Notice of Rights regarding her charge against Defendant MITRE.

10. On March 4, 2015, the EEOC issued Ms. Russell a Dismissal and Notice of Rights regarding her charge against Defendant Andrews.

11. The instant action is timely because it is initiated within 90 (ninety) days of the receipt of the aforementioned Dismissal and Notice of Rights.

12. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## PARTIES

13. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

14. Defendant Andrews is a corporation that provides security services to clients and is a wholly-owned subsidiary of Andrews International, Inc.

15. Defendant MITRE is a corporation that operates research and development centers sponsored by the federal government. At all times relevant hereto, MITRE was a client of Andrews.

16. Plaintiff is a former Security Officer who was employed by Andrews and MITRE at MITRE's McLean, Virginia location.

17. Ms. Russell currently resides in Suitland, Maryland.

18. Ms. Russell is a female.

19. Ms. Russell is a homosexual.

## FACTUAL ALLEGATIONS

### *DEFENDANTS WERE JOINT EMPLOYERS OF PLAINTIFF*

20. Ms. Russell was hired by Vance Security USA in November 2008. In June 2009, Vance Security was acquired by Defendant Andrews.

21. Defendant Andrews assigned Ms. Russell to work at Defendant MITRE's Mclean, VA offices from in or about November 2008 until she was transferred on May 2012.

22. Ms. Russell's assigned duties included filling in at MITRE's reception desk for MITRE employees, patrolling MITRE's buildings, meeting deliveries, responding to alarm activations and medical injuries/emergencies, and other security related matters.

4

23. Defendant Andrews maintained the right to control when, where, and how Ms. Russell performed her job as a Security Officer.

24. For example, Andrews set Ms. Russell's work schedule and assigned her to various posts throughout MITRE's building.

25. Defendant MITRE maintained the right to control when, where, and how Ms. Russell performed her job as a Security Officer.

26. For example, MITRE's Shift Supervisor Mr. Robey and Shift Leader Ms. Boone, personally directed Ms. Russell to perform certain duties, including staffing certain locations throughout the MITRE campus.

27. Additionally, Mr. Robey and Ms. Boone directed MITRE's Command Center, staffed by two MITRE employees, to monitor Ms. Russell's work performance and direct her to various locations throughout the workplace.

28. Defendant MITRE and Andrews furnished Ms. Russell with the tools, materials, and equipment to perform her job.

29. For example, Defendant MITRE provided Ms. Russell with a two-way radio by which to receive communications from MITRE's Command Center, while Defendant Andrews provided Ms. Russell with apparel and a flashlight to perform her job duties.

30. During Ms. Russell's employment with Andrews at the MITRE worksite, Andrews and MITRE were joint employers.

### *PLAINTIFF'S SUPERVISOR FROM MITRE SEXUALLY HARASSED PLAINTIFF*

31. Ms. Boone was a Security Shift Supervisor with MITRE and Leader of the shift upon which Ms. Russell had been assigned.

32. Ms. Boone is a female and on information and belief is a homosexual.

5

33. Ms. Boone's duties included supervising and assigning responsibilities to Ms. Russell, including ensuring that Ms. Russell completed her rounds and monitoring her performance.

34. Ms. Boone reported to Mr. Robey, a MITRE Manager.

35. Throughout her employment with Defendant, Ms. Russell was sexually harassed by Ms. Boone. Ms. Boone asked Ms. Russell out on dates approximately six times and made derogatory, sexual comments to Ms. Russell on a daily basis.

36. On more than one occasion, Ms. Boone asked Ms. Russell if she was "interested in her" and asked Ms. Russell whether she found her attractive.

37. Ms. Boone asked Ms. Russell was interested in "Dom[inant]" females.

38. On approximately 3-4 occasions, Ms. Boone invited Ms. Russell to go to a "Sexhibition," which Ms. Russell understood as a venue to view erotic sex acts. Ms. Boone's invitations made Ms. Russell uncomfortable and on each occasion, Ms. Russell declined Ms. Boone's invitations.

39. Ms. Russell rejected or ignored all of Ms. Boone's advances and invitations. After rejecting Ms. Boone's advances, Ms. Boone told Ms. Russell she was not a real "Dom," "soft," "a pussy for real," and "a punk for real."

40. On information and belief, Ms. Boone did not treat Ms. Russell's similarly situated male co-workers in the same manner as described in paragraphs 36-40.

41. On information and belief, Ms. Boone had a prior sexual relationship with another female Security Officer. MITRE reprimanded Ms. Boone for that relationship and the Security Officer was transferred to another worksite.

42. Following Ms. Russell's rejection of Ms. Boone's sexual advances, Ms. Boone began to specifically track Ms. Russell's movements around Defendant's worksite using security cameras.

43. Ms. Boone reprimanded Ms. Russell in retaliation for rejecting Ms. Boone's sexual advances.

44. Ms. Boone informed other MITRE supervisors, including Mr. Robey and Gordon Lynch, about Ms. Russell's sexuality, knowing that the MITRE supervisors were hostile to homosexuals.

45. Ms. Boone directed Ms. Russell to stay out of Mr. Robey's radar because of his hostility to homosexuals and to go through her if Ms. Russell needed anything.

### PLAINTIFF'S SUPERVISOR FROM MITRE HARASSED PLAINTIFF BECAUSE OF HER GENDER

46. After Ms. Boone informed Mr. Robey about Ms. Russell's sexual orientation, Mr. Robey regularly restricted Ms. Russell's movements at MITRE in contradiction with Ms. Russell's assigned duties and excessively scrutinized Ms. Russell's work performance.

47. For example, Ms. Russell would regularly be assigned to Station 8, known as a Rover, which meant she would patrol the entire campus. Instead of permitting Ms. Russell to patrol the entire campus per her assignment, Mr. Robey would instruct her to stay in a certain building or post. Mr. Robey's instructions were outside of proper procedures.

48. On information and belief, Mr. Robey did not treat Ms. Russell's similarly situated co-workers that abide by heterosexual gender stereotypes in the same manner as described in paragraphs 47-48.

7

## DEFENDANT ANDREWS FAILED TO ACT IN RESPONSE TO
## PLAINTIFF'S COMPLAINTS

49. Between 2010 and April 2012, Ms. Russell made many informal verbal complaints of Ms. Boone's sexual harassment to Mr. Tolton, Project Manager and Ms. Russell's primary supervisor.

50. In addition, Ms. Russell made at least four formal verbal complaints to Mr. Tolton.

51. Mr. Tolton failed to take any corrective action and stated to Ms. Russell, "you better give in," meaning that she should abide by Ms. Boone's wishes.

52. In or about September 2011, Ms. Russell was promoted to Security Shift Supervisor based on merit.

53. The Security Shift Supervisor position was during the night shift.

54. The night shift Security Shift Supervisor position required the Supervisor to regularly go in and out of a truck on the MITRE campus.

55. Mr. Tolton suggested Ms. Russell take the promotion because she would work on the night shift when Ms. Boone was not on duty and thereby avoid Ms. Boone's harassment.

56. After about six months of working as a Security Shift Supervisor, Ms. Russell requested that she be reassigned back to the day shift due to the neck and back pain that arose from Ms. Russell having to constantly get in and out of the Security Shift Supervisor's truck.

57. Therefore no Security Shift Supervisor positions available on the day shift and Andrews placed Ms. Russell back on the day shift as a Security Officer.

58. Mr. Tolton took no action to address Ms. Boone's harassing conduct once Ms. Russell returned to the day shift.

8

### DEFENDANT MITRE FAILED TO ACT IN RESPONSE TO PLAINTIFF'S COMPLAINTS

59. In the spring of 2012, Ms. Russell met with Cyndy Rubin and complained to her that Ms. Boone was retaliating against her because she had refused to "date her," that Mr. Robey and Ms. Boone were scrutinizing her every move, and that Mr. Robey repeatedly ordered her to not follow proper procedures.

60. In or about March 2012, Ms. Rubin held a meeting with Ms. Russell, Mr. Tolton, and Mr. Robey about Mr. Robey directing Ms. Russell outside of proper procedures.

61. Ms. Rubin did not discuss Ms. Russell's complaint of harassment by Ms. Boone.

62. In the March 2012 meeting, Ms. Russell complained that Mr. Robey was treating her differently because of Ms. Russell's sexual orientation. No action was taken on this complaint.

### PLAINTIFF'S ANDREWS SUPERVISOR FINALLY INSTRUCTS PLAINTIFF TO SUBMIT A WRITTEN COMPLAINT

63. On April 3, 2012, Ms. Boone directed Ms. Russell to assist with escorting guests in the MITRE building. When Ms. Russell attempted to escort guests to the Atrium, Ms. Boone directed her to work the South Lobby. Ms. Russell complied with all of Ms. Boone's requests.

64. On April 3, 2012, Ms. Boone falsely reported to Mr. Robey and Mr. Tolton that Ms. Russell had been insubordinate. Mr. Tolton told Ms. Russell that "Jae wants you removed from the building."

65. On April 9, 2012, Ms. Russell again verbally complained to Mr. Tolton of the sexual harassment and her belief that she was the target of Ms. Boone's retaliation.

66. Mr. Tolton instructed Ms. Russell to quickly submit her complaint in writing. Ms. Russell then submitted her written sexual harassment complaint to Mr. Tolton via email.

67. In her written complaint, Ms. Russell referenced her prior verbal complaints to Mr. Tolton and complained of sexual harassment and retaliation.

### *DEFENDANTS TRANSFERRED PLAINTIFF BECAUSE OF HER COMPLAINTS*

68. On May 9, 2012, Francis Coates ("Mr. Coates"), Andrews' Facility Security Officer, provided Ms. Russell with a piece of paper which stated that Andrews had completed an investigation of her complaints.

69. Ms. Russell was never interviewed during Andrews' "investigation" or asked to identify any witnesses.

70. Mr. Coates told Ms. Russell that she would be transferred to another site as a result of her complaint.

71. Ms. Russell objected to being transferred.

72. Mr. Coates provided Mr. Russell with a document and told her she had to sign it.

73. The document stated that Andrews had properly investigated Ms. Russell's complaints.

74. Mr. Coates told Ms. Russell that she had to sign the document "in order for me to help you. If you don't sign this, I can't help you."

75. Ms. Russell signed the document under duress.

76. Mr. Coates did not give Ms. Russell a copy of the document.

77. The document stated that "disciplinary action" would be taken against Ms. Boone but that it was "confidential."

78. On information and belief, MITRE transferred Ms. Boone to another facility.

79. The document stated the "investigation" found that Andrews' policy against romantic, sexual, or exploitive relationships between Andrews employees and its clients had been violated.

80. Ms. Russell did not engage in any romantic, sexual, or exploitive relationship with Ms. Boone. Therefore, there were no grounds for transferring Ms. Russell to another worksite.

81. On or about May 9, 2012, Andrews transferred Ms. Russell to a less desirable worksite for a different client, MTC Integration ("MTC") in Maryland.

82. MTC was a less desirable work site than MITRE due to the higher likelihood of advancement while working for MITRE, the higher caliber and experience of the Andrews Security Officers at MITRE than at MTC, and Andrews' contract with MTC being set to expire without renewal, which Ms. Russell later learned.

83. On information and belief, MITRE instructed Andrews to remove Ms. Russell from the MITRE worksite.

84. On information and belief, Andrews had contracts with MITRE to provide security services for other locations throughout the District of Columbia metropolitan region.

85. Defendants transferred Ms. Russell because of her complaints of sexual harassment.

### PLAINTIFF'S TRANSFER WAS A CONSTRUCTIVE DISCHARGE

86. On information and belief, MITRE instructed Andrews to terminate Ms. Russell.

87. On information and belief, as of the date it decided to transfer Ms. Russell, Andrews knew that its contract with MTC was going to expire in August 2012 and Andrews knew that the contract was not going to be renewed.

88. On information and belief, in May 2012 Defendants knew that Andrews' contract with MTC was going to expire in August 2012 and Defendants knew it was unlikely to be renewed.

89. On information and belief, Andrews intentionally withheld information about the expiration and lack of renewal of its contract with MTC from Ms. Russell.

90. On information and belief, Andrews' contract with MITRE was for a longer term and more secure than its contract with MTC.

11

91. On information and belief, Andrews had other longer term and more secure contracts with clients other than MITRE and MTC.

92. On information and belief, Security Officers working for MTC were paid approximately $15.00 (fifteen dollars) per hour. Ms. Russell's salary working with MITRE was approximately $19.57 (nineteen dollars and fifty seven cents) per hour, gross.

93. Ms. Russell was able to keep the MITRE pay rate while working for MTC, but was instructed not to tell the other Security Officers about her pay rate.

94. On or about July 2012, Ms. Russell was shocked to learn that Andrews' contract with MTC was set to expire and not be renewed. Ms. Russell contacted Mr. Coates about her concerns of the expiring contract. Mr. Coates told Ms. Russell not to worry because the expiring contract would not affect her future with Andrews.

95. In August 2012, Andrews' contract with MTC expired and was not renewed.

96. After the expiration of the contract, MTC invited the Security Officers, including Ms. Russell, to stay on at a pay rate of $15.50 (fifteen dollars and fifty cents) per hour, less than the hourly rate she had earned at MITRE.

97. Ms. Russell declined to work for MTC at that the decreased pay rate, which would equal $8,465.60 (eight thousand, four hundred, sixty five dollars and sixty cents) less in gross income, not including overtime pay, per year than when working for Defendants.

98. In August 2012, Mr. Coates contacted Ms. Russell about applying for Top Secret security clearance. Mr. Coates told Ms. Russell that Andrews would sponsor her application so that Ms. Russell could be placed at a new worksite commensurate with her level of experience after the MTC contract expired. Ms. Russell submitted the documents requested by Mr. Coates for the security clearance application.

12

99. Andrews failed to transfer Ms. Russell to another worksite and terminated Ms. Russell's employment on or about September 9, 2012.

100. On September 11, 2012, Ms. Russell filed Charges of Discrimination with the Equal Employment Opportunity Commission.

## COUNT I: QUID PRO QUO HARASSMENT

101. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

102. Throughout Ms. Russell's employment, Ms. Boone made repeated sexual advances against Ms. Russell.

103. Ms. Russell rebuffed all of Ms. Boone's advances.

104. Ms. Boone had the authority to assign duties to and reprimand Ms. Russell.

105. Ms. Russell's rejection of Ms. Boone's advances was the underlying motivation for her decision to reprimand Ms. Russell.

106. When Ms. Russell complained of Ms. Boone's sexual advances and resulting reprimand, Defendants transferred Ms. Russell to MTC, knowing that Andrews' contract with MTC was scheduled to end without renewal.

107. Ms. Russell was then terminated.

108. Ms. Russell's termination resulted from her refusal to submit to Ms. Boone's sexual demands.

109. Any non-discriminatory reason proffered by Defendants for transferring or terminating Ms. Russell is pretext for unlawful discrimination.

110. To redress Defendants' discriminatory acts under Count I, Plaintiff seeks back pay, front pay, injunctive relief, compensatory damages, emotional distress damages, punitive damages,

attorneys' fees and court costs, and such other equitable relief as this Court deems appropriate.

**COUNT II: HOSTILE WORK ENVIRONMENT**

111.    All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

112.    Ms. Russell was subject to unwelcomed harassment because of her sex and gender and the harassment affected Ms. Russell's terms, conditions, and privileges of employment.

113.    The sexual harassment was subjectively and objectively severe or pervasive.

114.    Ms. Russell complained to Defendants about the sexual harassment.

115.    Defendants were aware of Ms. Russell's sexual harassment and failed to take effective action to stop it.

116.    Defendants transferred and terminated Ms. Russell in retaliation for her complaints of sexual harassment/hostile work environment.

117.    Defendants' transfer of Ms. Russell was a constructive discharge.

118.    Any non-discriminatory reason proffered by Defendants for transferring or terminating Ms. Russell is pretext for unlawful discrimination.

119.    To redress Defendants' discriminatory acts under Count II, Plaintiff seeks back pay, front pay, injunctive relief, compensatory damages, emotional distress damages, punitive damages, attorneys' fees and court costs, and such other equitable relief as this Court deems appropriate.

**COUNT III: RETALIATION**

120.    All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

121.    Ms. Russell engaged in protected activity between 2010 and April 2012 when she
verbally complained of Ms. Boone's sexual harassment to Mr. Tolton.

122.    Ms. Russell engaged in protected activity in the spring of 2012 when she verbally
complained to Ms. Rubin that Ms. Boone was retaliating against her because she had refused
to "date her" and that Mr. Robey was treating her differently because of the gender
stereotype of her sexuality.

123.    Ms. Russell engaged in protected activity when she submitted her written complaint of
Ms. Boone's sexual harassment on April 9, 2012.

124.    Ms. Russell experienced an adverse employment action in May 2012 when Defendants
transferred Ms. Russell from MITRE to MTC; a contract that Defendants knew was set to
expire and knew or knew it was likely that it would not be renewed.

125.    Ms. Russell's transfer was without grounds.

126.    Ms. Russell experienced an adverse employment action when Andrews terminated Ms.
Russell on or about September 9, 2012.

127.    Defendants transferred and terminated Ms. Russell in retaliation for her complaints of
sexual harassment/hostile work environment.

128.    Defendants' transfer of Ms. Russell was a constructive discharge.

129.    To redress Defendants' discriminatory acts under Count III, Plaintiff seeks back pay,
front pay, injunctive relief, compensatory damages, emotional distress damages, punitive
damages, liquidated damages, attorneys' fees and court costs, and such other equitable relief
as this Court deems appropriate.

## Prayer for Relief

Plaintiff respectfully requests that this Court grant the following relief:

15

130.   Entry of judgment in favor of Ms. Russell and against Defendants;

131.   Back pay;

132.   Reinstatement, or in the alternative, front pay;

133.   Compensatory and punitive damages pursuant to 42 U.S. Code § 1981a;

134.   Attorney's fees and costs; and

135.   Other such relief as may be appropriate to effectuate the purposes of Title VII.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: April 14, 2015

Respectfully submitted,

/s/ Jeremy Greenberg

Jeremy Greenberg (VA Bar No. 86165)
Clark Law Group, PLLC
1250 Connecticut Ave, N.W.,
Suite 200
Washington, D.C. 20036
(202) 293-0015
jgreenberg@benefitcounsel.com

16